IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SONIA E. BASS, and <br> SEB AUTO GROUP, LLC <br><br> Plaintiffs, <br><br> vs. <br><br> MAACO FRANCHISOR SPV, LLC, <br> DRIVEN BRANDS, INC., DARYL <br> HURST, and HELMUTH MAYER <br><br> Defendants. | CIVIL ACTION NO. 4:24-cv-00820-ALM |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs Sonia E. Bass and SEB Auto Group, LLC file this response to Defendants MAACO Franchisor SPV, LLC's, Driven Brands, Inc.'s, and Daryl Hurst's motion for judgment on the pleadings (the "Motion") (Dkt. 25), which should be denied for the following reasons.

**I.**

**FACTUAL BACKGROUND**

This case involves a franchisee, SEB Auto Group, LLC ("SEB"); SEB's sole member, Sonia E. Bass ("Bass") (collectively "Plaintiffs"); franchisor, MAACO Franchisor SPV, LLC ("Franchisor"); Franchisor's agent, Daryl Hurst ("Hurst"); Franchisor's parent company, Driven Brands, Inc. ("Driven Brands"); and franchisee Helmuth Mayer ("Mayer") (collectively, Franchisor, Driven Brands, and Hurst are referred to as "Defendants").

On or around April 24, 2020, Franchisor and SEB entered into a MAACO Franchise Agreement (the "Agreement").[1] SEB and Franchisor are the only signatories to the Agreement.[2] SEB only entered into the Agreement based on the numerous misrepresentations and material omissions made by Franchisor, including but not limited to: (1) false statements regarding the provision of and access to fleet accounts; (2) failure to disclose required fees to be paid on fleet accounts; (3) failure to disclose that the licenses required to open additional MAACO centers were contractually and exclusively provided to Mayer; (4) failure to disclose that Franchisor had contractually awarded Mayer "Most Favored Franchisee" status or granted Mayer certain rights of first refusal; and (5) failure to disclose the requirement that Franchisor must approve all fleet account assignments.[3]

By and through the Agreement, SEB became the franchisee of the MAACO franchise located at 2434 North Story Road, Irving, Texas 75062 (the "Franchise"), which is in the Dallas-Fort Worth metroplex.[4] Prior to purchasing the Franchise, Plaintiffs had no experience in franchise business dealings and had no industry knowledge or experience; therefore, Plaintiffs relied heavily upon the Defendants' representations during the purchase process.[5] After entering into the Agreement, Defendants engaged in further material misrepresentations and omissions, including but not limited to: (1) unilaterally, and without notice or reason, changing the fleet certification requirement to "Platinum" from "Gold," which requires an additional monetary investment by franchisees, including Plaintiff, to obtain; (2) requiring Plaintiffs to hire Alldata to handle fleet scans at an additional cost per month based on the promises that Alldata would provide the training

---

[1] Plaintiffs' amended complaint ("Complaint"), at ¶ 12 (Dkt. 9); the Agreement, attached as Ex. 1 to the Motion (Dkt. 25-1).
[2] Complaint, at ¶ 13 (Dkt. 9); the Agreement, at p. 32 (Dkt. 25-1).
[3] Complaint, at ¶¶16-20, 22 (Dkt. 9).
[4] Complaint, at ¶¶ 12-13 (Dkt. 9); the Agreement, at ¶ 1 (Dkt. 25-1).
[5] Complaint, at ¶¶ 15-16 (Dkt. 9).

for and implementation of its services, which Alldata never provided, despite Defendants promises and Plaintiffs' payments; (3) giving preferential treatment to another franchisee over Plaintiffs; (4) withholding awards of fleet accounts; (5) failing to provide Plaintiffs with the promised support, including not providing Plaintiffs with a coach for several months and then providing an inexperienced coach that could not handle the number of locations assigned to him; (6) inconsistently withdrawing franchise fees; (7) manipulating franchise discount policies and implementing unrealistic performance-based thresholds; (8) overcharging Plaintiffs marketing and advertising fees and then failing to provide Plaintiffs with the promised services; (9) requiring Plaintiffs to incur double-billing for software systems; and (10) requiring Plaintiffs to act as a pilot program for a new materials ordering system, and then allowing Plaintiffs to incur incorrect sales tax charges.[6]

Defendants' conduct giving rise to the Agreement and then occurring routinely after Plaintiffs' operations commenced was all directed toward Plaintiffs in Texas, where Plaintiffs reside and where the Franchise is physically located and operated.[7] Plaintiffs, located in Texas, were induced into entering into the Agreement by Defendants.[8] Defendants then engaged in preferential and disparate treatment of DFW-area franchise owners by favoring a different Collin County, Texas franchisee over Plaintiffs.[9] Defendants repeatedly engaged in conduct that both violated the terms of the Agreement and detrimentally impacted Plaintiffs' business operations here in Texas, and specifically DFW.[10] Further, Defendants engaged in hostile, retaliatory, and harassing conduct toward Bass in Texas, including publicly berating and humiliating Bass at a

---

[6] Complaint, at ¶¶ 22-31 (Dkt. 9).
[7] Complaint, at ¶¶ 1-2, 12-20 (Dkt. 9).
[8] Id.
[9] Id.
[10] Id.

corporate event in Arlington, Texas.[11] All of the events giving rise to this lawsuit occurred, took place, or were directed toward Plaintiffs in Texas.[12]

Plaintiffs have pled sufficient facts in the Complaint to support their claims against Defendants, including their claim for violation of the Texas Business Opportunity Act/Texas Deceptive Trade Practices Act ("DTPA claim").[13] Plaintiffs specifically describe the deceptive and misleading acts and practices that form the basis of their DTPA claim.[14] Moreover, Defendants first sought to have this matter transferred to North Carolina in their motion to transfer venue, filed October 31, 2024.[15] In response, Plaintiffs' pled sufficient facts to invalidate the forum selection clause in the Agreement.[16] The Court has not yet rendered its decision on Defendants' motion to transfer venue. For the following reasons, the Motion must be denied.

## II.

## ARGUMENT AND AUTHORITIES

**A.   Legal Standard**

The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss. *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 567-68 (E.D. Tex. 2021) (citing *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)); *see also Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020) (citing *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)). In examining a motion for judgment on the pleadings, therefore, the court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the

---

[11] Complaint, at ¶¶ 34-37 (Dkt. 9).
[12] Complaint, at ¶¶ 1-2, 12-37 (Dkt. 9).
[13] Complaint, at ¶¶ 15-22, 41-52 (Dkt. 9).
[14] Id.
[15] Defendants' motion to transfer venue (Dkt. 11).
[16] Plaintiffs' response to Defendants' motion to transfer venue (Dkt. 14).

plaintiff. *Cinemark Holdings*, 500 F. Supp 39 at 567-68 (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hale*, 963 F.3d at 427. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Cinemark Holdings*, 500 F. Supp. 3d at 567-68 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

**B.     The Complaint pleads sufficient facts to survive the Motion.**

Viewed in the light most favorable to Plaintiffs, the pleadings clearly contain sufficient factual matter, that when accepted as true, state a claim for relief that is plausible on its face. Namely, in the Complaint, Plaintiffs plead the following facts in support of their DTPA claim:

- Plaintiffs entered into the Agreement for the purpose of operating a MAACO Franchise in Irving, Texas.[17]

- Defendants made numerous misrepresentations to Plaintiffs relating to the Agreement, including (1) false statements regarding the provision of and access to fleet accounts; (2) failure to disclose required fees to be paid on fleet accounts; (3) failure to disclose that the licenses required to open additional MAACO centers were contractually and exclusively provided to Mayer; (4) failure to disclose that Franchisor had contractually awarded Mayer "Most Favored Franchisee" status or granted Mayer certain rights of first refusal; (5) failure to disclose the requirement that Franchisor must approve all fleet account assignments.[18]

---

[17] Complaint, at ¶ 43 (Dkt. 9).
[18] Id, at ¶¶ 16-20, 22 (Dkt. 9).

- Defendants' made these misrepresentations and failed to disclose material information with the intent to induce Plaintiffs to enter into the Agreement.[19]

- Plaintiffs relied upon Defendants' material misrepresentations and omissions when entering into the Agreement and would not have entered into the Agreement had Defendants been truthful and provided Plaintiffs with all material information.[20]

These facts, as expressly pled in the Complaint, are sufficient to state a claim for relief against Defendants at this stage in the litigation. The Court is required to take these facts as true and view in the light most favorable to Plaintiffs, notwithstanding Defendants' allegations to the contrary. Thus, at this stage, it must be assumed that Plaintiffs have met their burden under Rule 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure because the Court must assume the truthfulness of Plaintiffs' pleadings. *Cinemark Holdings*, 500 F. Supp. 3d at 567-68 ("[T]he court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff.").

    **C.**    **In response to Defendants' motion to transfer venue, currently pending, Plaintiffs have pled sufficient facts to create a fact issue as to the validity and enforceability of the forum selection clause.**

The sole basis for the Motion is the forum-selection clause found in Section 25 of the Agreement. Defendants contend that Plaintiffs' DTPA claim must be dismissed because North Carolina is the proper forum for this matter and the Texas Deceptive Trade Practices Act is Texas statute. All of the cases relied upon by Defendants in the Motion relate to the enforcement of the forum selection clause. As more thoroughly pled by Plaintiffs in response to Defendants' motion to transfer venue, the forum-selection clause is invalid due to the presence of fraud and public policy, and is unenforceable under the "convenience analysis" under 28 U.S.C. §1404(a), which

---

[19] Id, at ¶ 15 (Dkt. 9)..
[20] Id.

considers private convenience and bargaining power.

      i.   <u>Validity</u>.

Plaintiffs have pled a claim for fraudulent inducement/fraud by non-disclosure ("fraud claim") against Defendants, which relies upon the same material misrepresentations and omissions that form the basis of the DTPA claim.[21] As pled in the Complaint, and more thoroughly briefed in Plaintiffs' response to Defendants' motion to transfer venue, Plaintiffs would not have entered into the Agreement but for the misrepresentations and omissions Defendants intentionally made to Plaintiffs.[22]

Further, enforcement of the forum-selection clause in the Agreement would contravene a strong public policy in Texas. Arguably, Texas has an interest in resolving the dispute between the parties because Plaintiffs have pled allegations of violations of the Texas Deceptive Trade Practices Act, a Texas statute, as well as allegations against and between two Texas residents.[23] Similarly, all of Defendants' conduct that gives rise to this lawsuit was directed toward the State of Texas, including involving Texas residents, Texas-based entities, and DFW-based franchise locations.[24] Texas has a strong public policy interest in adjudicating the disputes giving rise to this case; therefore, it would contravene strong public policy to transfer this matter to North Carolina, where only two of the defendants are located.[25]

      ii.   <u>Enforceability</u>.

The "convenience analysis" under 28 U.S.C. §1404(a) favors denying Defendants' request to transfer venue. In making the "convenience analysis," the Court must consider private

---

[21] Id, at ¶¶ 15-22 (Dkt. 9).
[22] Id; Plaintiffs' response to Defendants' motion to transfer venue (Dkt. 14).
[23] Id.
[24] Id.
[25] Id.

convenience and bargaining power. *Brock v. Baskin-Robbins USA Co.*, 113 F.Supp.2d 1078, 1084 (E.D. Tex. 2000) (providing that the Court "must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice."). The private convenience factors include: (1) the convenience of the parties and witnesses; (2) the place of the alleged wrong; (3) the location of counsel; (4) the cost of obtaining the attendance of witnesses; (5) the accessibility and location of sources of proof; (6) the possibility of delay and prejudice if a transfer is granted; and (7) the plaintiff's choice of forum, which is usually given great deference. *Robertson v. Kiamichi RR Co.,* 42 F.Supp.2d 651, 655 (E.D.Tex.1999). Plaintiffs have clearly demonstrated that each of these private convenience factors weighs heavily in favor of the Court rendering the forum-selection clause unenforceable and maintaining the action *in Texas*.[26]

Moreover, the Court must also consider the bargaining power of the parties to the Agreement.[27] *IJL Dominicana S.A. v. It's Just Lunch Int'l, LLC*, No. CV08-5417-VAP, 2009 WL 305187 (C.D. Cal. Feb. 6, 2009); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006). Here, Plaintiffs had zero bargaining power—Defendants presented the Agreement to Plaintiffs on a take-it-or-leave-it basis and Plaintiffs had no meaningful choice other than to accept the terms of the Agreement, including the forum-selection clause, or not become a franchisee.[28]

In conclusion, Plaintiffs have pled sufficient facts in the Complaint supporting and forming the basis for their DTPA claim and have fully briefed the venue (and forum selection clause) issue—which directly impacts the outcome of this Motion—in their response to Defendants' motion transfer venue. Based on the foregoing reasons, the Court should deny the Motion.

---

[26] Plaintiffs' response to Defendants' motion to transfer venue (Dkt. 14).
[27] Id.
[28] Ex. 1 to Plaintiffs' response to Defendants' motion to transfer venue, at ¶ 16 (Dkt. 14-1).

     **D.    In the alternative, the Court should decide Defendants' motion to transfer venue prior to considering the present Motion.**

Defendants' motion to transfer venue and Plaintiffs' response thereto, which is still pending before the Court, addresses the validity and enforceability of the forum-selection clause in the Agreement. An order on the motion to transfer venue is necessary before the Court can adequately consider or rule on this Motion. To the extent the Court finds that the forum-selection clause is invalid or unenforceable and that Texas is the proper venue for this matter, then Plaintiffs unequivocally have the right to pursue their DTPA claim against Defendants.

On the other hand, even if this Court finds that the forum-selection clause is valid and enforceable and transfers this matter, Plaintiffs still have the right to pursue a deceptive trade practices claim against Defendants. Texas' DTPA is "closely analogous" to North Carolina's Unfair Trade Practices Act, with both providing consumers with a private cause of action for damages arising from any "[u]nfair methods of competition ..., and unfair or deceptive acts or practices in or affecting commerce...." *Republic Indus., Inc. v. Atl. Veneer Corp.*, 166 F.3d 1210. *3 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 47 (4th Cir. 1983)). As it currently stands, the Motion is premature. Subject to the foregoing, to the extent this Court transfers this matter to North Carolina, Plaintiffs would respectfully request leave to amend their complaint to include a cause of action for violations of North Carolina's Unfair Trade Practices Act instead of Texas' DTPA.

## **PRAYER**

For the reasons set forth above, Plaintiffs Sonia E. Bass and SEB Auto Group, LLC respectfully request the Court deny Defendants' motion for judgment on the pleadings.

Respectfully submitted,

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
eric@brownfoxlaw.com
Morgan M. Buller
State Bar No. 24109670
morgan@brownfoxlaw.com

BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Phone: (214) 327-5000
Fax: (214) 327-5001

ATTORNEYS FOR PLAINTIFFS
SONIA E. BASS AND
SEB AUTO GROUP, LLC